**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
WICHITA FALLS DIVISION**

| | |
|---|---|
| **LAFAYETTE SHEPPARD** § | |
| Petitioner § | |
| § | |
| V § | **CIVIL ACTION NO: 7:11-CV-140–O-KA** |
| § | |
| USA § | |
| Respondent § | |

Report and Recommendation on Motion to Vacate Sentence

Under the authority of 28 U.S.C. § 636(b) and Rules 8(b) and 10 of the Rules Governing Section 2254 Proceedings for the United States District Courts, this case was referred to the undersigned United States Magistrate Judge by Order of Reference (Docket No. 9) for hearing, if necessary, and proposed findings of fact, conclusions of law and recommendation for disposition.

Procedural Background[1]

On August 17, 2010 pursuant to a written plea agreement[2] containing an appellate waiver,[3] Lafayette Sheppard pleaded guilty to Count One of an indictment that charged him with aiding and abetting possession with intent to distribute 50 grams or more of cocaine base.[4] At sentencing on November 23, 2010, pursuant to the written plea agreement the government dismissed Count Two of the indictment, which charged Sheppard with possession of a firearm during and in relation to a

---

[1] Docket References are to the original criminal case, Cause No. 7:10-CR-6 unless otherwise noted.

[2] Docket No. 29

[3] *Id.* at ¶ 11.

[4] Docket No. 1.

1

drug - trafficking offense in violation of 18 U.S.C. § 924(c)(1)(A) and 18 U.S.C. § 2.[5] The Judgment confirming the sentence and the dismissal of Count Two as entered November 30, 2010.[6] On November 30, 2010 , the District Court sentenced Sheppard to 327 months in prison. He did not file a direct appeal, so his conviction became final on December 14, 2010. See Fed. R. App. P. 4(b)(1)(A) . On September 26, 2011, Sheppard timely filed his first motion under 28 U.S.C. § 2255.[7]

Factual Background[8]

At approximately 5:30 a.m. on June 11, 2009, a SWAT team of the Wichita Falls Police Department executed a search warrant at an apartment in Wichita Falls. Officers found Lafayette and his girlfriend and later co-defendant , Latasha Wyatt, in bed in the master bedroom. A search of the apartment uncovered in the master bedroom a box containing 41 plastic bags of crack cocaine, with a collective gross weight of 74 grams. Officers also found additional plastic bags and digital scales. A .25-caliber semiautomatic pistol was in a pouch lying by the nightstand on the left side of the bed. Mail addressed to Wyatt was found in that nightstand. In the nightstand on the right side of the bed were $448 in cash, a .22-caliber revolver, Sheppard's identification card, and his cell phone. Both Sheppard and Wyatt had been convicted of felony offenses and therefore could not legally possess firearms. Subsequent lab analysis of the drugs confirmed that it amounted to 61.7 grams of crack cocaine. On the day of the warrant execution, Wyatt provided a notarized affidavit

---

[5] Docket No. 70.

[6] Docket No. 72.

[7] Docket No. 101, which was opened as a civil case in this Cause No. 7:11-CV-140.

[8] Unless cited from a different source, the facts recounted are contained in the presentence investigation report ("PSR") or the factual resume supporting Sheppard's guilty plea (Docket. No. 30).

in which she claimed that all of the contraband in the apartment belonged to her and not Sheppard. She later recanted her statement, saying that Sheppard advised her to tell officers that everything belonged to her. Sheppard and Wyatt were named in a two-count indictment charging them both with possession of more than 50 grams of cocaine base with intent to distribute (and aiding and abetting same) and with aiding and abetting possession of a firearm in furtherance of a drug-trafficking offense.

Sheppard subsequently pleaded guilty pursuant to a written plea agreement[9] that contemplated dismissal of the firearms charge in exchange for a guilty plea to the drug-trafficking charge and waiver of his appellate rights. By obtaining dismissal of the firearms charge, Sheppard avoided an additional sentence of at least five years, which would have been served consecutively to any sentence received on the drug offense.[10]

In the plea agreement, Sheppard acknowledged that he was pleading guilty freely and voluntarily, that he was not pleading guilty as a result of any threat or promise apart from promises made in the plea agreement, and acknowledged that "[t]here have been no guarantees or promises from anyone as to what sentence the Court will impose."[11] Sheppard also verified that he had carefully reviewed the entire plea agreement with his attorney and agreed to it.[12]

At re-arraignment before the District Court,[13] Sheppard testified that he understood his trial

---

[9]   Docket No. 29.

[10]  PSR ¶ 80.

[11]  Docket. No. 29 at ¶ 10.

[12]  Id. at p. 8.

[13]  Docket. No. 89, Transcript of Re-Arraignment Proceedings.

3

rights and wished to waive them. The Court admonished Sheppard that, in federal court, "it is the judge who determines whatever sentence is to be imposed."  The Court further explained the sentencing process and cautioned Sheppard that "you shouldn't rely upon any promise made by anyone, whether connected with law enforcement or not, as to what sentence you might receive." Sheppard reported understanding.  The Court also advised Sheppard that a defendant ordinarily would have the right to appeal, but "your plea agreement waives the right to appeal except under certain circumstances." Sheppard reported understanding the sentencing process and the charges against him. He also admitted that he committed the essential elements of the offense.  And he verified that his guilty plea was not procured by any threat or *promise*.  During re-arraignment, the Court directed the prosecutor to recite the terms of Sheppard's plea agreement and instructed him to "pay special attention to . . . the right to appeal and maximum range of punishment."  The prosecutor did so, accurately recounting the appellate-rights waiver and noting that Sheppard's range of punishment was not less than 10 years and not more than life.[14]

The PSR calculated a total offense level of 34, based in part on application of the career-offender provisions of USSG § 4B1.1. Sheppard had prior felony convictions in state court for possession of a controlled substance, possession with intent to deliver, and delivery of a controlled substance.  Based on a criminal history category of VI, the PSR computed a recommended guidelines range of 262 to 327 months. An addendum to the PSR noted that the 2010 Guidelines Manual reduced Sheppard's base offense level for crack cocaine offenses and amended the PSR accordingly. It noted, however, that the total offense level was unchanged because Sheppard is a career offender. The PSR addendum also reduced his criminal history points, although that

---

[14]    *Id*. at 19.

Case 7:11-cv-00140-O-KA   Document 10   Filed 11/12/13   Page 5 of 14   PageID 57

change, too, did not alter the ultimate guidelines range. The Court sentenced Sheppard to 327 months in prison.[15]

## Petitioner's Alleged Grounds for Relief

By his Motion, Sheppard asserts three grounds for relief:

1. That his trial counsel rendered ineffective assistance of counsel by promising Sheppard that he would receive a sentence no more than twenty years in prison.

2. That Sheppard was entitled to re-sentencing to a lesser term under the Fair Sentencing Act of 2010 relating to crack cocaine offenses.

3. That his trial counsel rendered ineffective assistance of counsel by telling Sheppard that he should not appeal his conviction since he had no grounds for appeal.

## Government's Response

In Response, the Government asserts that:

1. Sheppard's first claim of ineffective assistance is contradicted by the record, and he does not allege prejudice.

2. Sheppard waived his right to raise the second ground in collateral proceedings.

3. Sheppard has not shown that his attorney was deficient or that he was prejudiced by his attorney's advice that an appeal would not be fruitful.

## Standard for Review

Under 28 U.S.C. § 2255, a prisoner may move the convicting court to vacate, set aside, or correct his conviction or sentence. It provides four grounds: "(1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to

---

[15] Docket No. 72 at p. 2.

impose the sentence; (3) the sentence exceeds the statutory maximum sentence; or (4) the sentence is otherwise subject to collateral attack." *United States v. Placente*, 81 F.3d 555, 558 (5th Cir. 1996) (internal marks omitted). When a prisoner has pled guilty, he will successfully challenge his convictions under section 2255 only "if: (1) the plea was not entered voluntarily or intelligently, . . . or (2) the [prisoner] establishes that he is actually innocent of the underlying crime." *United States v. Sanders*, 157 F.3d 302, 305 (5th Cir. 1998). The prisoner bears a heavy burden to convince the court that his guilty plea was involuntary after testifying to its voluntariness in court. *Deville v. Whitley*, 21 F.3d 654, 659 (5th Cir. 1994). This is because solemn declarations in open court carry a strong presumption of verity. *Blackledge v. Allison,* 431 U.S. 63, 73-74, 97 S. Ct. 1621, 1628-29, 52 L. Ed. 2d 136 (1977).

Judge John McBryde in *United States v. Moore*, 2013 U.S. Dist. LEXIS 104666 (N.D. Tex. 2013) recently summarized the standard for review of claims of ineffectiveness of counsel as follows:

> "To prevail on a claim of ineffective assistance of counsel, movant must establish that counsel's performance fell below an objective standard of reasonableness. *Strickland v. Washington*, 466 U.S. 668, 688, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). To prevail on such a claim, movant must show that counsel's performance was deficient and that movant was prejudiced by counsel's errors. *Id.* at 687. Prejudice requires movant to show there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceedings would have been different. *Id.* at 694. In the context of a guilty plea, prejudice requires movant to show there is a reasonable probability that, but for his attorney's errors, he would not have pleaded guilty but would have gone to trial. *Hill v. Lockhart*, 474 U.S. 52, 59, 106 S. Ct. 366, 88 L. Ed. 2d 203 (1985). While both prongs of the Strickland test must be met to demonstrate ineffective assistance, both need not be considered if movant makes an insufficient showing as to one. Id. at 687, 697."
> "Judicial scrutiny of this type of claim must be highly deferential; movant must overcome a strong presumption that counsel's conduct falls within a wide range of reasonable professional assistance. *Id.* at 689. The court must make "every effort . . . to eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's

6

perspective at the time." *Id*. Counsel should be "strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reason-able professional judgment." p. 690.

## Discussion

### Counsel's Promise as to Sentence

In the context of a plea of guilty, the Fifth Circuit recently stated in *Bond v. Dretke*, 384 F. 3d 166, 167-68 (2004):

> "To prove prejudice an ineffective assistance of counsel claim in the context of a guilty plea, the habeas petitioner must show that "there is a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill v. Lockhart*, 474 U.S. 52, 59, 88 L. Ed. 2d 203, 106 S. Ct. 366 (1985). To obtain federal habeas relief on the basis of alleged promises, a petitioner must prove that he was promised an "actual sentencing benefit" by showing (1) the exact terms of the alleged promise, (2) exactly when, where, and by whom the promise was made, and (3) the precise identity of an eyewitness to the promise. *Daniel v. Cockrell*, 283 F.3d 697, 703 (5th Cir. 2002); see also *United States v. Cervantes*, 132 F.3d 1106, 1110 (5th Cir. 1998)."

In *Davis v. Butler*, 825 F.2d 892 (5th Cir. 1987), the attorney promised the defendant that he would be pardoned in three (3) years, the court stated:

> "The question here is not whether Davis understood the terms of his sentence, but whether he was promised by his attorney, and actually believed he would eventually be pardoned from this sentence. No mention of a pardon was made during the sentencing proceeding. The only evidence in the record which undercuts Davis's claim is his acknowledgement (sic) that he had not been made "any promises at all." This acknowledgment (sic), although a "formidable barrier," does not conclusively bar him from proving the existence of a promise. See *Blackledge v. Allison*, 431 U.S. 63, 74-75, 97 S. Ct. 1621, 1629-30, 52 L. Ed. 2d 136 (1977). For him to now contradict such a statement "there must be *independent indicia* of the likely merit of the petitioner's contentions, and mere contradiction of his statements at the guilty plea hearing will not carry his burden." *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir.1986). Cf. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir.1985) (to be entitled to evidentiary hearing on claim that sworn statements during the plea proceeding were false, petitioner must make "specific factual allegations supported by the affidavit of a reliable third person"). (*emphasis added*) A petitioner is not entitled to an evidentiary hearing when his allegations of an unkept promise are inconsistent with the bulk of his conduct, and when he offers no detailed and specific

7

facts surrounding the agreement. *Raetzsch*, 781 F.2d at 1152. "In situations where an actual promise has been made to a petitioner, rather than there being merely an 'understanding' on his part, federal habeas relief is awardable if the petitioner 'proves[s] (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.'" *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir.1986) (quoting *Self v. Blackburn*, 751 F.2d 789, 793 (5th Cir.1985) (emphasis in original))." p. 894.

This case is on all fours with the state court habeas case *Harmason v. Smith*, 888 F.2d 1527 (5th Cir. 1989), in a state court proceeding the defendant claimed promise of attorney that sentence would be no more than 15 years, the court stated:

> ". . . As Harmason notes, for a guilty plea to be constitutionally valid, it must be voluntary and knowing. *Smith v. McCotter*, 786 F.2d 697, 701 (5th Cir. 1986). However, his "mere 'understanding'" that he would receive a lesser sentence in exchange for a guilty plea will not abrogate that plea should a heavier sentence actually be imposed. See *Davis v. Butler*, 825 F.2d 892, 894 (5th Cir. 1987); *Smith*, 786 F.2d at 701; *Self v. Blackburn,* 751 F.2d 789, 792-93 (5th Cir. 1985); *Bradbury v. Wainwright*, 658 F.2d 1083, 1087 (5th Cir. 1981), cert. denied, 456 U.S. 992, 102 S. Ct. 2275, 73 L. Ed. 2d 1288 (1982).
> In order for a prisoner to receive federal habeas relief on the basis of alleged promises that are inconsistent with representations made in open court when his guilty plea was accepted, he must "'prove (1) exactly what the terms of the alleged promise were; (2) exactly when, where, and by whom such a promise was made; and (3) the precise identity of an eyewitness to the promise.'" *Davis*, 825 F.2d at 894 (quoting *Smith*, 786 F.2d at 701). For *Harmason* to prevail on his request for an evidentiary hearing, he must present the court with "'independent indicia of the likely merit of [his] contentions. . . .'" *Davis*, 825 F.2d at 894 (quoting *United States v. Raetzsch*, 781 F.2d 1149, 1151 (5th Cir. 1986)). Such indicia may include an affidavit from a reliable third party. *United States v. Fuller*, 769 F.2d 1095, 1099 (5th Cir. 1985). p. 1529.

Apart from his single allegation that his trial counsel told him that "I was going to get 15-year's or no more than 20 years" and that "he could not believe that I get 27 year's I was poss.[sic for "supposed"] to get leser [sic] time," Sheppard fails to identify any eyewitness to such promise and fails to allege or present anything else in support of his bare, naked claim of his counsel's alleged promise. In the light of the District Court's colloque at the time of the taking of his guilty

8

plea, something more is necessary. At the re-arraignment the Court asked Sheppard whether he had been promised anything or otherwise was induced to enter his plea of guilty. To that direct inquiry by the court, Sheppard, under oath, acknowledged that he had not received any such promise.

On the necessity for a hearing, the case of *Blackledge v. Allison*, 431 U.S. 63 (1977) stands for the proposition that "This is not to say that every set of allegations not on its face without merit entitles a habeas corpus petitioner to an evidentiary hearing. *Id.* At 80." In the face of the Court's admonishments at the time of the taking of his plea of guilty and Sheppard's own acknowledgments of the lack of any promises regarding his sentence, something more is required in order for Sheppard to be entitled to a hearing. Sheppard offers nothing more. I find that Sheppard is not entitled to a hearing on this issue and that his claim lacks merit as a matter of law.

Fair Sentencing Act Issue

Sheppard raises the issue of his sentence for being in possession of cocaine base ("crack") is in error due to the application of the Fair Sentencing Act of 2010. This issue was raised by Sheppard prior to his filing of his Motion to Vacate. While Sheppard's Motion to Vacate was pending, Sheppard's previously filed Motions to Reduced Sentence[16] under the Fair Sentencing Act of 2010 relating to crack cocaine offenses was litigated and determined by the District Court,[17] and then on appeal to the Fifth Circuit Court of Appeals.[18] Furthermore, this issue is precluded by the Fifth Circuit's later holding in the similar case of *United States v. Jaimes*,[19] wherein the court held:

---

[16]   Docket No. 98 and 104.

[17]   Docket Nos. 103, 107 and 130.

[18]   Docket Nos. 113, 116,and 125.

[19]   489 Fed. Appx. 751, 752, 2012 U.S. App. Lexis 20286 (August 27, 2012)

9

> "As a career offender, Jaimes's offense level was dictated by the statutory maximum applicable to the offense. See USSG § 4B1.1(b). The career offender guideline ties the offense level to the statutory maximum sentence for that offense, so an offense with a statutory maximum of life results in an offense level of 37. See USSG 4B1.1(b)(1)" p. 751..."Both before and after the effective date of the FSA, Jaimes faced a maximum sentence of life imprisonment and a career offender level of 37. Thus, the new statute has no impact on his guideline range and the sentence imposed. No remand for re-sentencing is required in this case."

As a matter of law, this ground has no merit.

### No Notice of Appeal

Notwithstanding Sheppard's claim that his counsel failed to file a notice of appeal, Sheppard wholly fails to allege that he wanted to appeal, or asked his attorney to file a notice of appeal, or asked his attorney to otherwise pursue an appeal, and has failed to present any issue which such appeal could have determined. By his plea agreement, Sheppard waived the right of appeal as well as the right to pursue a motion to vacate, except for four conditions: 1. Sentence exceeding the statutory maximum, 2. Mathematical error, 3. Ineffectiveness of counsel; and, 4. involuntariness of his plea. As to this ground, Sheppard has alleged nothing to implicate the application of any of these conditions.

The *Strickland* standard relating to the issue of ineffective assistance of counsel applies to Sheppard's claim regarding an appeal. In *United States v. Tayler*,[20] the Fifth Circuit iterated:

> "It is well-settled that the failure to file a requested notice of appeal constitutes ineffective assistance of counsel even without a showing that the appeal would have merit. *Roe v. Flores-Ortega*, 528 U.S. 470, 477, 486, 120 S. Ct. 1029, 145 L. Ed. 2d 985 (2000). This rule applies even where a defendant, like Taylor, "has waived his right to direct appeal and collateral review." *United States v. Tapp*, 491 F.3d 263, 266 (5th Cir. 2007). "[I]f the petitioner is able to demonstrate by a preponderance of the evidence that he requested an appeal, prejudice will be presumed and the petitioner will be entitled to an out-of-time appeal, regardless of

---

[20] 270 Fed. Appx. 363, 366, 2008 U.S. App. LEXIS 6165 (2008).

>  whether he is able to identify any arguably meritorious grounds for appeal that would not be precluded by the terms of his appeal waiver." *Id*. (remanding for an evidentiary hearing as to the notice of appeal and implying that the requested appeal can be made by the defendant or a family member). See also, *United States v. Hereford*, No. 06-11004, 242 Fed. Appx. 251, 252 (5th Cir. Sept. 18, 2007) (per curiam) (citing Tapp, 491 F. 3d at 266)."

See also, to the same effect, *Smith v. United States*, 2008 U. S. Dist. LEXIS 92497 (N.D. Tex.2008)." In this case, the Court summarized the holding in the 8th Circuit case of *United States v. Robinson*, 171 Fed. Appx, 536, 537-38, 2006 WL 708929 (Mar. 22, 2006) wherein the defendant remained silent and took no action after his trial counsel discussed appeal but then advised the defendant that there was no basis for a successful appeal because he "could not have gotten anything better than this." Such is the case here.

By his Motion, Sheppard does not allege or claim that he requested his attorney to file an appeal. Rather, he confirms that his attorney did prepare, deliver, and discuss with him some appeal papers ["some A-penil pappers"]. But Sheppard claims "...he told me not to singe the A-penil pappers, because it will do me no good, and it will not help me in no kind of way of giveing my time back.!!"[21] Therefore, Sheppard acknowledges that his attorney did consult with him as to the taking of an appeal and advised him according to the attorney's own judgment. In this case Sheppard does not claim and there do not otherwise appear to have been any non-frivolous appealable issues regarding the areas where the Sheppard retained his appellate rights. Moreover, while the plea agreement did not specify or stipulate a fixed sentence, Sheppard was sentenced within the statutory limit and within the applicable guideline range under the Sentencing guidelines as confirmed by the

---

[21] Petitioner's Motion to Vacate, Docket No. 101, p 5.

11

trial court and the Court of Appeals.[22] Although Sheppard retained limited appellate rights, there is no reason for counsel to believe that a rational defendant would want to appeal under these circumstances. See *Hayward v, United States*, 2012 U.S. LEXIS 77819 ( E.D. Tex. 2012). As a result, the non-filing of a notice of appeal by Sheppard's trial counsel was not a deficiency in his representation, did not constitute deficient performance and this ground for review is without merit.

Finding that none of the grounds alleged by Sheppard have merit as a matter of law for the reasons stated, I recommend to the District Court that Sheppard's Motion to Vacate be DENIED.

It is so ORDERED, this 12th day of November, 2013.

                                *Robert K. Roach*
                              Robert K. Roach
                              UNITED STATES MAGISTRATE JUDGE

Standard Instruction to Litigants

A copy of this report containing findings and recommendations shall be served on all parties in the manner provided by law. Any party who objects to any part of this order, report, findings and recommendations must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's report and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Services Automobile Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

---

[22] See notes 17 and 18, *supra*.

Extracts from Transcript of Re-arraignment
Docket No. 89, Cause No. 7:10-CV-6

Page 10
18      THE COURT: All right. Generally, a
19 defendant should not plead guilty unless he is actually
20 guilty of a crime. Now, you should understand that in
21 federal court it is the judge who determines whatever
22 sentence is to be imposed. And that's true whether a
23 defendant is convicted in a jury trial or just a trial
24 before the judge or on a guilty plea. It's the judge
25 that does the sentencing; do you understand that?

Then on Page 11

16      THE COURT: In the event the I accept your
17 pleas and you are found guilty and you are convicted,
18 you and your attorneys, Mr. McKnight and Mr. Merkle,
19 will each be given an opportunity to present to the
20 Court any pleas for leniency. The penalty that the
21 Court decides should be imposed, what sentence or
22 punishment or penalty, will be decided on the basis of
23 the facts the Court hears in open court. Therefore, you
24 shouldn't rely upon any promise made by anyone, whether
25 connected with law enforcement or not, as to what

Then on page 12

1 sentence you might receive. If you decide to plead
2 guilty, your plea of guilty must not be induced by any
3 threats, coercion or force or prompted by any promise,
4 pressures, threats of any kind. It must be absolutely
5 purely voluntary. A plea of guilty -- if you plead
6 guilty, you should plead guilty only if you are guilty
7 and for no other reason.
8 Do you now understand each of these
9 explanations that I've given to you and the process of
10 and the consequences of pleading guilty?
11 MR. SHEPPARD: Yes, Your Honor.

Then on page 24

6      THE COURT: Let me inquire. Mr. Sheppard,
7 has anyone made any promise or assurances to you of any

13

8 kind in order to induce you to enter a plea of guilty in
9 this case?
10 MR. SHEPPARD: No, Your Honor.
11 THE COURT: Has anyone mentally or
12 physically or in any other way attempted to force you to
13 plead guilty in this case?
14 MR. SHEPPARD: No, Your Honor.
15 THE COURT: Now, you understand that if your
16 guilty plea is accepted, I'll recommend that you be
17 adjudicated to be guilty of the offense charged in Count
18 No. 1 of the indictment, that is, Aiding and Abetting
19 Possession of a Controlled Substance with Intent to
20 Distribute a Controlled Substance, namely, 50 Grams or
21 More of a Mixture and Substance Containing a Detectable
22 Amount of Cocaine Base, and that your punishment will be
23 assessed somewhere in the range of punishment provided
24 by the statutes, you understand that?
25 MR. SHEPPARD: Yes, Your Honor.

Then on page 34

18    THE COURT: At this time I'll ask the
19 Defendants and their counsel to rise. Mr. Lafayette
20 Sheppard, having heard everything that I've spoken about
21 previously, how do you plead to Count No. 1 of the
22 indictment charging you with Aiding and Abetting
23 Possession with Intent to Distribute a Controlled
24 Substance, namely 50 Grams or More of a Mixture and
25 Substance Containing a Detectable Amount of Cocaine

Then on page 35

1 Base? Do you plead guilty or not guilty?
2 MR. SHEPPARD: Guilty, Your Honor.

14